UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
DANIEL JOHN RILEY,                    :
            Plaintiff,                :
                                      :
        v.                            :     12-cv-175 MML
                                      :
THOMAS COLANTUONO,                    :
JOHN P. KACAVAS,                      :
SETH R. AFRAME,                       :
each in their individual             :
capacity,                             :
            Defendants.               :
```

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court is a *pro se* complaint filed by Plaintiff Daniel John Riley ("Plaintiff" or "Riley"), a prisoner at the United States Correctional Institution at Terre Haute, Indiana. Because the named defendants are (or formerly were) governmental officers or employees, this matter as been referred for preliminary review pursuant to 28 U.S.C. § 1915A.[1]

---

[1] 28 U.S.C. § 1915A provides in relevant part:

(a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

     (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

## I.  Standard of Review

In a preliminary review, the court construes *pro se* pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007)(per curiam).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381, 124 S.Ct. 786 (2003)(courts may construe *pro se* pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom, see Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  Stanley v. Landers, Civil No. 09-cv-52-PB, 2009 WL 2242676, at *1 (D.N.H. July 23, 2009).

## II.  Facts[2]

On September 12, 2007, seven firearms owned by Riley were

---

(2) seeks monetary relief from a defendant who is immune
from such relief.

    ...

28 U.S.C. § 1915A.

[2] The facts are taken from the Complaint which for purposes of this preliminary review are assumed to be true.

seized by agents of the United States.  Complaint ¶ 6.  On or about
September 22, 2008, Thomas Colantuono ("Colantuono"), who was then
the United States Attorney ("U.S. Attorney") for the District of
New Hampshire, acting through an assistant U.S. Attorney in his
office, Seth R. Aframe ("Aframe"), initiated a civil forfeiture
proceeding in the U.S. District Court for the District of New
Hampshire against the firearms.  Id. ¶ 7.

Riley alleges that on or about October 23, 2008, Colantuono,
by and through Aframe, filed a fraudulent affidavit of service in
the forfeiture proceeding which falsely represented that Riley's
attorney, Sven Wiberg ("Wiberg"), had been served with the civil
forfeiture complaint and other relevant documents.  Id. ¶ 8.  Riley
further alleges that other potential claimants, identified as
"Gerhard and Gonzales," id. ¶ 9, "who were similarly situated[] in
the very same civil forfeiture proceeding, were afforded a good
faith effort of being served notice ...," id.

Riley failed to answer the forfeiture complaint.  Id.
Thereafter, Colantuono, by and through Aframe, filed a motion to
forfeit Riley's property.  Id.  On or about December 23, 2008, U.S.
Magistrate Judge James R. Muirhead ordered that Riley's property be
forfeited.  Id. ¶ 10.

While the civil forfeiture proceeding was ongoing, Riley filed
a motion in his criminal case and wrote a letter to the U.S.
Attorney's Office requesting the immediate return of his property.

3

Id. ¶ 11.  Riley alleges that he was told by both the court and the U.S. Attorney's Office that he had to wait until after the direct appeal was final before his property could be returned.  Id.

With his appeal still pending, Riley learned from a family member on May 25, 2010, that his property had been forfeited in a civil action.  Id. ¶ 12.  Riley filed a claim in the civil forfeiture action on June 3, 2010, which was apparently styled as a motion to reopen and alleged "deprivation of constitutionally adequate notice."  Id.

On or about June 23, 2010, Kacavas, by, with, and through, Aframe:

> object[ed] to Riley's inadequate notice claim on the grounds Riley's [a]ttorney, Sven Wiberg, had actually been served notice via certified mail; as proof, presented to the Court fraudulent or falsified Postal Service documents, to wit: Certified Mail Receipt ... and the corresponding Return Receipt ... addressed to Sven Wiberg; and also presented a fraudulent "PROCESS RECEIPT AND RETURN" dated 5/12/2009 ... as proof [that] Riley's property had been destroyed.[3]

Id. ¶ 13.  Based on these documents, U.S. Magistrate Judge Landy B. McCafferty, who had succeeded Judge Muirhead, denied Riley's motion to reopen.  Id. ¶ 14.  Riley appealed the denial to the First Circuit Court of Appeals but that court, allegedly relying upon the fraudulent Postal Service documents, denied his appeal on January 17, 2012.  Id. ¶ 15.

---

[3] Riley avers on information and belief that his property "is currently in the possession of government employees associated with the New Hampshire U.S. Attorney's Office."  Complaint ¶ 13.

Two weeks later, Riley mailed a photocopy of the allegedly fraudulent Postal Service documents to Attorney Wiberg.  Id. ¶ 16. On February 17, 2012, Riley spoke by telephone with Wiberg and learned that Wiberg had not received notice of the forfeiture, that he had not signed the return receipt, and that someone had forged his signature.  Id.  ¶ 17.

## III.  Discussion

Riley states that this action is brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91  S.Ct. 1999 (1971).[4]   The Complaint contains six counts against Colantuono, Kacavas, and Aframe ("Defendants") for the following causes of action: denial of procedural due process (Count I), denial of substantive due process (Count II), denial of equal protection (Count III), civil conspiracy (Count IV), theft by deception (Count V), and intentional infliction of emotion distress (Count VI).  The Court discusses these counts seriatim.

### A.  Count I - Denial of Procedural Due Process

"To state a valid procedural due process claim, a plaintiff must (1) 'identify a protected liberty or property interest,' and (2) allege that the defendants ... deprived [him] of that interest

---

[4] "[A] Bivens action is the federal analog to suits brought against state officials under ... 42 U.S.C. § 1983." Hartman v. Moore, 547 U.S. 250, 255 n.2, 126 S.Ct. 1695 (2006); see also Abel v. Lappin, 661 F.Supp.2d 1361, 1383 (S.D. Ga. 2009)("A conspiracy 'to violate another person's constitutional rights states a cause of action pursuant to Bivens.'")(quoting Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)).

without constitutionally adequate process.'" Air Sunshine, Inc. v. Carl, 663 F.3d 27, 34 (1st Cir. 2011)(alterations in original) (quoting González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011)). Prior notice is the hallmark of procedural due process. Elena v. Municipality of San Juan, 677 F.3d 1, _ (1st Cir. 2012). Riley has alleged sufficient facts to state a constitutionally protected property interest in the firearms. See Cooper v. City of Greenwood, Mississippi, 904 F.2d 302, 305-06 (5th Cir. 1990)(holding that a defendant has a constitutionally protected property interest in legal firearms which could not be extinguished without according him due process); see also United States v. 133 Firearms with 36 Rounds of Ammunition, No. 2:08-cv-1084, 2012 WL 511287, at *6 (S.D. Ohio Feb. 15, 2012)("Courts have recognized that even when a convicted felon has been stripped of a possessory interest in firearms, he still had a constitutionally protected property interest limited to an ownership interest."). Riley has alleged that Defendants intentionally deprived him of that possessory interest without prior notice of the forfeiture proceeding. See Lobzun v. United States, 422 F.3d 503, 507 (7th Cir. 2005)("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")(quoting Mullane v. Cent.

6

<u>Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314, 70 S.Ct. 652 (1950)).[5]
Therefore, I find that Riley has adequately pled a procedural due
process claim.

**B.   Count II - Denial of Substantive Due Process**

"[I]n order to state a substantive due process claim of any
ilk, a plaintiff must allege behavior on the part of the defendant
that is so outrageous that it shocks the conscience." <u>Mongeau v.
City of Marlborough</u>, 492 F.3d 14, 19 (1st Cir. 2007); <u>see also</u>
<u>Harron v. Town of Franklin</u>, 660 F.3d 531, 536 (1st Cir. 2011)("Where
... a plaintiff's substantive due process claims challenge the
constitutionality of certain executive acts, 'the plaintiff must
show *both* that the acts were so egregious as to shock the
conscience *and* that they deprived him of a protected interest in
life, liberty, or property.")(quoting <u>Pagán v. Calderón</u>, 448 F.3d
16, 32 (1st Cir. 2006)); <u>Martínez v. Cui</u>, 608 F.3d 54, 65 (1st Cir.
2010)("The conscience-shocking test is now an essential part of any
substantive due process claim against a government actor.").  "In
order to shock the conscience, the conduct must be 'truly
outrageous, uncivilized, and intolerable.'" <u>McConkie v. Nichols</u>,

---

[5]   It bears noting, however, that "[a]bsent exceptional
circumstances, written notice of forfeiture by certified mail to the
claimant's residence satisfies due process, even if the claimant does not
receive actual notice." <u>Lobzun v. United States</u>, 422 F.3d 503, 507 (7th
Cir. 2005).  Thus, Riley's ability to prevail on this due process claim
may depend on whether he is able to prove that Defendants knew that the
notice did not reach Wiberg and that his signature on the receipt had
been forged.

446 F.3d 258, 260 (1st Cir. 2006)(quoting <u>Hasenfus v. LaJeunesse</u>, 175 F.3d 68, 72 (1st Cir. 1999)); <u>see also</u> <u>Harron</u>, 660 F.3d at 536 (quoting <u>Hasenfus</u>).

"[A] hallmark of successful [substantive due process] challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." <u>Harron</u>, 660 F.3d at 536 (third alteration in original); <u>cf.</u> <u>Marrero-Rodríguez v. Municipality of San Juan</u>, ___ F.3d ___, 2012 WL 1571234, at *3-4 (1st Cir. May 7, 2012)(finding substantive due process claim sufficiently pled against police officer who, during a training exercise, placed a loaded firearm against the unprotected back of "suspect" who was face down, motionless, under control, and unarmed, and pulled the trigger, causing fatal wound); <u>id.</u> (same finding as to the co-supervisor of the training who "did nothing to intervene when Lt. Pacheco placed the gun to [suspect]'s back").

I do not find that the actions attributed to Defendants in the Complaint rise to the level required to support a substantive due process claim. <u>See</u> <u>Frei v. Town of Holland</u>, 212 Fed. Appx. 4, 6 (1st Cir. 2007)("The substantive due process claim based on allegations of perjury, falsification of documents, and retaliatory

action, fails under this circuit's case law."); <u>see also</u> <u>McConkie</u>, 446 F.3d at 261 ("lies alone are not necessarily considered conscience-shocking"); <u>Cruz-Erazo v. Rivera-Montañez</u>, 212 F.3d 617, 623-24 (1st Cir. 2000)(rejecting substantive due process claim based on police officers' provision of false affidavits and testimony to support a trumped-up burglary charge); <u>id.</u> at 618 ("Although we find appellees' alleged conduct disgraceful, it does not sufficiently 'shock the conscience' so as to state a claim under § 1983."); <u>cf.</u> <u>Castellano v. Fragozo</u>, 352 F.3d 939, 967 (5th Cir. 2003)(noting that "the Supreme Court has only characterized the type of conduct [plaintiff] alleges-fabricated evidence and perjured testimony—as violative of procedural, *not substantive*, due process").  Therefore, I recommend that Count II be dismissed.

### C.   Count III - Denial of Equal Protection

"To plead a viable equal protection claim, a plaintiff must allege facts indicating selective treatment 'compared with others similarly situated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Aponte-Torres v. Univ. of Puerto Rico</u>, 445 F.3d 50, 57 (1st Cir. 2006)(quoting <u>Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.</u>, 246 F.3d 1, 7 (1st Cir. 2001)); <u>see also</u> <u>Buchanan v. Maine</u>, 469 F.3d 158, 178 (1st Cir. 2006)("In general terms, a plaintiff not relying on 'typical' impermissible

categories, such as race or religion, must show that he was intentionally treated differently from others similarly situated, that no rational basis exists for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure."). "Plaintiffs claiming an equal protection violation must first 'identify and relate *specific instances* where persons *similarly situated in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled ... out for unlawful oppression.'" Buchanan, 469 F.3d at 178 (alterations in original)(quoting Rubinvitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995)).

A denial of equal protection claim styled as a "class of one" claim is "a claim in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment." SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 33 (1st Cir. 2008). In such "class of one" cases, plaintiffs have the burden of showing to a high degree the identity of the favored parties and the circumstances of the favored treatment. See Rectrix Aerodrome Ctrs., Inc. v. Barnstable Municipal Airport Comm'n, 610 F.3d 8, 16 (1st Cir. 2010). To determine whether two or more entities are similarly situated, the Court asks "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." SBT Holdings,

547 F.3d at 34.

Reading Riley's Complaint generously, he alleges that two other potential claimants, Gerhard and Gonzales, who were similarly situated to him, were afforded a good faith effort of being served notice of the forfeiture proceeding, <u>see</u> Complaint ¶ 9, and that he was not provided or served with notice because of a malicious or bad faith intent to injure on him on the part of Defendants, <u>see</u> <u>id.</u> ¶ 8 (alleging that Colantuono and Aframe acted in "bad faith" and in order to harm Plaintiff); <u>id.</u> ¶ 13 (same with respect to Kacavas).  Accordingly, I find that Riley has adequately pled at this preliminary stage an equal protection claim.

**D.  Count IV – Civil Conspiracy**

Claims of conspiracies to effect deprivations of civil or constitutional rights may be brought under <u>Bivens</u>.  <u>Hill v.</u> <u>Thalacker</u>, No. 04-C-732-C, 2004 WL 2730253, at *4 (W.D. Wis. Nov. 22, 2004).  To have an actionable <u>Bivens</u> conspiracy claim, a plaintiff must establish (1) the existence of an express or implied agreement among the defendants to deprive him of his constitutional rights and (2) an actual deprivation of those rights resulting from that agreement.  <u>Ting v. United States</u>, 927 F.2d 1504, 1512 (9th Cir. 1991).  In addition, a plaintiff is required to allege facts indicating that the defendants were personally involved in the constitutional violation.  <u>Arar v. Ashcroft</u>, 585 F.3d 559, 569 (2nd Cir. 2009); <u>see also</u> <u>Harris v. Roderick</u>, 126 F.3d 1189, 1195 (9th

Cir. 1997)(noting "the heightened pleading standard required for Bivens conspiracy claims"); Nuclear Transp. & Storage, Inc. v. United States, 890 F.2d 1348, 1355 (6th Cir. 1989)(finding heightened pleading standard "applicable to a Bivens as well as a 1983 claim"); cf. Horne v. Soc. Sec. Admin., 359 Fed. Appx. 138, 144 (11th Cir. 2010)(concluding that plaintiff "failed to satisfy the heightened pleading requirement for a Bivens action").

This Magistrate Judge, in accordance with the teachings of Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S.Ct. 1937 (2009), as interpreted by the First Circuit, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 10 (1st Cir. 2011), separates the Complaint's factual allegations from its legal conclusions, id. Applying this law, I find that the allegations in ¶ 27 of the Complaint, which is reproduced below, "are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681.

> 27.  As detailed [in ¶¶ 1-26], Colantuono, Kacavas and Aframe acted in concert, and/or by agreement to accomplish unlawful purposes or to accomplish lawful purposes by unlawful means (i.e. depriving Riley of his constitutionally guaranteed rights, theft, fraud, perjury, abuse of power, forgery and other wrongs) and caused Riley damage, including psychological, emotional and physical distress, the deprivation of his property and the violation of his clearly established constitutionally guaranteed rights.

Complaint ¶ 27.

The above paragraph is not dissimilar to "the allegation that

the <u>Twombly</u>[6] defendants had 'entered into a contract, combination, or conspiracy,' which had been disregarded by the <u>Twombly</u> Court, as an example of a conclusory statement that, though presented as an assertion of fact, simply describes the legal conclusion that the plaintiffs sought to infer from the other conduct alleged in the complaint." <u>Ocasio-Hernández</u>, 640 F.3d at 10 (quoting <u>Iqbal</u>, 556 U.S. at 679). Accordingly, this Magistrate Judge disregards ¶ 27 and examines the allegations in the preceding paragraphs for facts which support Riley's claim of conspiracy.

The only "facts" arguably alleged supporting this claim are that Colantuono and Aframe acted "in concert," in initiating the civil forfeiture, Complaint ¶ 7, filing the allegedly fraudulent Affidavit of Service, <u>see</u> <u>id.</u> ¶ 8, and moving to forfeit the firearms, <u>see</u> <u>id.</u> ¶ 9, and that Kacavas and Aframe acted "in concert," <u>id.</u> ¶ 13, by objecting to Riley's motion to reopen, <u>see</u> <u>id.</u> However, these "in concert" allegations are also conclusory in nature and not entitled to be assumed true. <u>Bertuglia v. City of New York</u>, ___ F.Supp.2d ___, 2012 WL 906958, at *16 (S.D.N.Y. Mar. 19, 2012)("The conclusory allegation that the [Port Authority] defendants and [two assistant district attorneys] 'conspired and acted in concert,' is insufficient to state a claim where it is not supported by additional factual allegations describing the alleged

---

[6] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007).

conspiracy.")(internal citation omitted); Zenquis v. City of Philadelphia, ___ F.Supp.2d ___, 2012 WL 952362, at 6 n.6 (E.D. Pa. Mar. 19, 2012)(noting that court is not required at pleading stage to assume as true plaintiff's bare allegation that "individuals who assaulted [him] 'were acting in concert and conspiracy with Philadelphia police officers'"); McCoy v. Gamesa Tech. Corp., No. 11 C 592, 2012 WL 245166, at *4 (N.D. Ill. Jan. 26, 2012) ("[Plaintiff] conclusorily alleges that [defendant] acted 'in concert, combination, or conspiracy' with [co-defendant], and this naked assertion does not raise the possibility of a conspiracy above the speculative level."); Cooper v. City of Chester, Civil Action No. 11-5381, 2011 WL 6046934, at *8 (E.D. Pa. Dec. 5, 2011) (dismissing plaintiff's conspiracy without prejudice where plaintiff "merely recit[ed] the empty terms 'conspiracy' and 'in concert' without supplying the requisite details"); see also Winters v. Jordan, No. 2:09-cv-00522 JAM KJN PS, 2012 WL 360194, at *10 (E.D. Cal. Feb. 2, 2012)(describing "in concert" and "colluding" as "empty buzzwords" and recommending dismissal of conspiracy claims with prejudice).  They are nothing more than legal conclusions masquerading as a factual allegations.  See In re Travel Agent Comm'n Anti-Trust Litig., 583 F.3d 896, 905 (6th Cir. 2009)(describing averment referring to "*agreement* between and among [d]efendants to reduce, cap and eliminate commissions paid to plaintiffs" as "nothing more than a legal conclusion masquerading

as factual allegation")(internal quotation marks omitted).

There are no remaining factual allegations in the Complaint to support the conspiracy claim.  Accordingly, I recommend that Count IV be dismissed.  See White v. United States, 791 F.Supp.2d 156, 162 (D.D.C. 2011)(dismissing plaintiffs' Bivens conspiracy claims where "they fail[ed] to allege any facts showing that there ever was any agreement"); see also Fuller v. Shartle, No. 4:11cv1821, 2012 WL 1068805, at *5 (N.D. Ohio Mar. 29, 2012)(finding "[p]laintiff's vague and conclusory allegations of a conspiracy ... insufficient to state a claim for relief under Bivens" and dismissing action pursuant to 28 U.S.C. § 1915(e)).

### E.  Count V - Theft by Deception

In support of this claim, Riley alleges:

> 29.    As detailed above [in paragraphs 1-27], Colantuono, Kacavas and Aframe knowingly and intentionally, with malice as a forethought, presented falsified Postal Service documents to the Courts, in order to deceive the Courts into relying on such documents so they would consequently deprive Riley of his property.

> 30.    As a direct consequence, Riley was the victim of theft of his property by the defendants' fraud committed on the Courts and Riley, causing Riley to be deprived of his property and to suffer damage in the form of psychological, emotional and physical traumatization [sic].

Complaint ¶¶ 29-30.

Theft by deception is a criminal offense under New Hampshire

law.  <u>See</u> N.H. Rev. Stat. Ann. § 637.4.[7]  However, "the violation

---

[7] N.H. Rev. Stat. Ann. § 637.4 provides:

I. A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof.

II. For the purposes of this section, deception occurs when a person purposely:

> (a) Creates or reinforces an impression which is false and which that person does not believe to be true, including false impressions as to law, value, knowledge, opinion, intention or other state of mind. Provided, however, that an intention not to perform a promise, or knowledge that it will not be performed, shall not be inferred from the fact alone that the promise was not performed; or

> (b) Fails to correct a false impression which he previously had created or reinforced and which he did not believe to be true, or which he knows to be influencing another to whom he stands in a fiduciary or confidential relationship; or

> (c) Prevents another from acquiring information which is pertinent to the disposition of the property involved; or

> (d) Fails to disclose a known lien, adverse claim or other legal impediment to the enjoyment of property which he transfers or encumbers in consideration for the property obtained, whether such impediment is or is not valid, or is or is not a matter of official record; or

> (e) Misrepresents to or misleads any person, in any manner, so as to make that person believe that the person on whose behalf a solicitation or sales promotion is being conducted is a charitable trust or that the proceeds of such solicitation or sales promotion shall be used for charitable purposes, if such is not the fact.

III. Theft by deception does not occur, however, when there is only falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. "Puffing" means an exaggerated commendation of wares in communications addressed to the public or to a class or group.

16

of a penal statute is an actionable wrong only when the Legislature expressly so provides ..., or when the purpose and language of the statute compel such inference ....” Marquay v. Eno, 662 A.2d 272, 276 (N.H. 1995)(alterations in original)(quoting Everett v. Littleton Constr. Co., 46 A.2d 317 (N.H. 1946)); see also id. (“the plaintiff may maintain an action under an applicable statute where the legislature intended violation of that statute to give rise to civil liability”).

There is nothing in § 637.4 or any other statute which this Court has been able to locate which indicates that the New Hampshire Legislature has expressly made theft by deception a statutory cause of action.  Id. at 278 (noting “that where the legislature has intended that civil liability flow from the violation of a statute, it has often so provided”)(citing as an example N.H. Rev. Stat. § 358-A:10[8] (1984) (deceptive trade

---

IV. A person commits theft under this section notwithstanding that the victim has suffered no actual or net pecuniary loss.

N.H. Rev. Stat. Ann. § 637.4.

[8] The current N.H. Rev. Stat. § 358-A:10, which is entitled “Private Actions,” provides:

I. Any person injured by another’s use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper.  If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $1,000, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount. In addition, a prevailing plaintiff

practices)).   There is also nothing in the apparent purpose or language of § 337.4 which "compel[s]," id. at 276, such an inference.   Therefore, I find no express or implied legislative intent to create a civil cause of action for theft by deception. Cf. Stroman v. Bank of Am. Corp., Civil Action No. 1:10-CV-4080-AT, 2012 WL 1123730, at *11 (N.D. Ga. Mar. 30, 2012)(dismissing plaintiff's claim for theft by deception because Georgia penal statutes "do not purport to create a private cause of action for ... theft by deception"); Weaver v. Indymac Fed. Bank, No. 09 Civ. 5091(SCR)(LMS), 2010 WL 7634134, at *8 (S.D.N.Y. June 8, 2010)("There is no case law that recognizes a New York common law claim of theft by deception."); Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc., No. 2:08-cv-04148-NKL, 2009 WL 2391769, at *6 (W.D. Mo. Aug. 3, 2009)(dismissing claim where defendants argued that "there is no basis for theft by deception as a cause of action under Missouri law and that it appears nowhere in

---

shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court. Any attempted waiver of the right to the damages set forth in this paragraph shall be void and unenforceable.  Injunctive relief shall be available to private individuals under this chapter without bond, subject to the discretion of the court.

II. Upon commencement of any action brought under this section, the clerk of the court shall mail a copy of the complaint or other initial pleadings to the attorney general and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general.

N.H. Rev. Stat. § 358-A:10.

Missouri statutes or case law"); <u>Martrano v. Quizno's Franchise Co.</u>, Civil Action No. 08-0932, 2009 WL 1704469, at *12 (W.D. Pa. June 15, 2009)(dismissing count for theft by deception alleged under Pennsylvania penal code because "the Code gives no authority for a private cause of action and none has been implied"); <u>Simms v. Athens Cnty. Sheriff's Dep't</u>, No. 2:02-CV-1096, 2006 WL 783369, at *5 (S.D. Ohio Mar. 26, 2006)("under Ohio common law, a plaintiff may not recover for theft by deception"); <u>Collier v. City of Little Rock, Arkansas</u>, No. 4:05-CV-01624 GTE, 2007 WL 3217468, at *6 (E.D. Ark. Oct. 25, 2007)(agreeing that "theft by deception is simply not a recognized civil cause of action under either federal or Arkansas law"). Accordingly, I recommend that Count V be dismissed because there is no cause of action for theft by deception under New Hampshire law.[9]

To the extent that Riley may be attempting to assert a claim for fraud based on the allegations which he describes as "theft by deception," Complaint ¶¶ 28-30, his allegations are insufficient. Even assuming (without finding) that the Complaint satisfies the

---

[9] The Court's conclusion that there is no civil cause of action for theft by deception is reenforced by the fact that none of the thirty cases identified in a Westlaw search of New Hampshire case law using the phrase "theft by deception" indicates to the contrary. Most of the cases are criminal cases. The few civil cases containing the phrase only refer to the criminal statute and do not suggest that there is a civil cause of action for "theft by deception."

particularity requirements for a fraud claim,[10] Riley's allegations
do not state such a cause of action for two reasons.  First, the
allegedly false representations were not made to Riley but to the
court.[11]  <u>See</u> Complaint ¶¶ 8, 10.  Therefore, they do not state a
cause of action for fraud actionable by Riley.  <u>See</u> <u>Moore v. Mortg.</u>
<u>Elec. Reg. Sys., Inc.,</u> ___ F.Supp.2d ___, 2012 WL 253834, at *17
(D.N.H. Jan. 27, 2012)("a plaintiff does not state a claim for
fraud against the maker of a fraudulent statement when that
statement was relied upon solely by others, even if that reliance
forms a link in the chain of events that ends up causing the harm
to the plaintiff").  Second, Riley makes no allegation that he
relied upon any of the alleged misrepresentations, an essential

_____

[10] "The Federal Rules of Civil Procedure ... require that '[i]n
alleging fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake.'  Fed. R. Civ. P. 9(b)."
<u>Bourne v. Stewart Little Guar. Co.</u>, No. 09-cv-00270-PB, 2011 WL 635304,
at *3 (D.N.H. Feb. 16, 2011)(quoting <u>S.E.C. v. Tambone</u>, 597 F.3d 436, 442
(1st Cir.  2010)); <u>see also</u> <u>In re Stockeryale Sec. Litig.</u>, 453 F.Supp.2d
345,  349-50  (D.N.H.  2006)("The  particularity  requirement  entails
specifying in the pleader's complaint the time, place, and content of the
alleged false or fraudulent representations.  In addition, the complaint
must set forth *specific facts* that it make it reasonable to believe that
the defendant knew that a statement was materially false or misleading.
The rule requires that the *particular times, dates, places or other
details* of  the  alleged  fraudulent  involvement  of  the  actors  be
alleged.")(internal quotation marks and citations omitted).  Riley's
Complaint is devoid of any specific facts to make it reasonable to
believe that Colantuono and Kacavas knew that the representations made
by their subordinate, Aframe, were false.

[11] To the extent that Riley may contend that the allegation in ¶ 11
("The Court and the U.S. Attorney's Office told Riley he had to wait
until after the direct appeal was final before his property could be
returned.") supports a claim for fraud, such contention fails because the
allegation does not support the particularity requirements for fraud and
he has not alleged that he relied on this communication from the court
and the U.S. Attorney's Office.

element for a claim of fraud.[12]  Archdiocese of San Salvador v. FM Int'l, LLC, No. 05-CV-237-JD, 2006 WL 437493, at *10 n.15 (D.N.H. Feb. 23, 2006)(noting that reliance is an essential element of fraud).  To the contrary, he alleges that he continued to seek the return of the firearms notwithstanding Defendants' misrepresentations.  See Complaint ¶¶ 12-17.  Thus, he has not stated a claim for fraud.  Moore, 2012 WL 253834, at *17 ("Under New Hampshire law, a plaintiff can recover in fraud only for 'pecuniary loss caused to [it] by [its] justifiable reliance upon the misrepresentation.'")(alterations in original)(quoting Gray v. First NH Banks, 640 A.2d 276, 279 (N.H. 1994)); see also Ostler v. Codman Research Grp., Inc., No. 98-356-JD, 1999 WL 813889, at *9 (D.N.H. Aug. 12, 1999)("When a plaintiff claims fraud by affirmative misrepresentation, the plaintiff bears the burden of proving reasonable reliance.").  Accordingly, to the extent that Riley may be attempting to plead a claim fraud in Count V, his allegations fail to do so.  Thus, I recommend that his theft by deception claim not be treated as a claim for fraud.

To the extent that Riley may be attempting to plead a claim

---

[12] Although Riley alleges in ¶ 14 that he "ha[d] been deceived by these fraudulent Postal Service documents ...," Complaint ¶ 14, there is no allegation by Riley that he relied upon this or any representations made by Defendants to his detriment.  To the contrary, Riley claims that he persisted in his motion to reopen notwithstanding the presentation of the allegedly fraudulent documents.  This is evident from the fact that he appealed the denial of his motion to the First Circuit.  See United States v. Century Arms Int'l, Model L1A1, Sporter, 308 Caliber Rifle, No. 11-1599 (1st Cir. Jan. 17, 2012).

for conversion[13] based on the facts which he describes as theft by deception, his claim fails because he has not pled that he has satisfied the jurisdictional requirements of the Federal Tort Claims Act,[14] 28 U.S.C. § 2675.[15]  See Skwira v. United States, 344

---

[13] "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.  Muzzy v. Rockingham Cnty. Trust Co., 309 A.2d 893, 894 (N.H. 1973).

[14] The Federal Tort Claims Act ("FTCA") grants district courts jurisdiction over claims:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Wojciechowicz v. United States, 582 F.3d 57, 66 (1st Cir. 2009)(quoting 28 U.S.C. § 1346(b)(1)).

[15] 28 U.S.C. § 2675 provides in relevant part:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.**  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.  The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2675(a) (bold added).

F.3d 64, 71 (1st Cir. 2003)("It is well settled in this circuit that the timely filing of an administrative claim pursuant to [28 U.S.C.] § 2401 is a jurisdictional prerequisite to filing suit under the FTCA."); see also Coyne v. Cronin, 386 F.3d 280, 283 (1st Cir. 2004)("prior filing of an administration claim is a jurisdictional prerequisite to a claim under the FTCA"). Furthermore, Congress has incorporated into the FTCA a series of fixed time limits. Román-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010). "A tort claim against the United States 'shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented.'" Id. (quoting 28 U.S.C. § 2401(b)). "These temporal parameters are strictly construed in favor of the sovereign." Id. There is nothing in Riley's Complaint which indicates that he has complied with the FTCA's requirements for bringing a claim for conversion. Accordingly, his theft by deception claim should not be treated as an inartfully pled conversion claim. I so recommend.

**F.  Count VI - Intentional Infliction of Emotional Distress**

In order to make out a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that a defendant, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another. Moore,

2012 WL 253834, at *21.  "[I]t is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." Id. (quoting Tessier v. Rockefeller, 33 A.3d 1118, 1131 (N.H. 2011))(alteration in original).  "Instead, the defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (internal quotation marks omitted).  The First Circuit has stated that "[t]he standard for making a claim of intentional infliction of emotional distress is very high." Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002); id. (explaining that even conduct "characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort" is insufficient for recovery on such a claim).

Riley alleges in ¶ 32 in support of his claim for IIED, in addition to the allegations in the preceding paragraphs, that:

> Colantuono, Kacavas and Aframe, knew or should have known that emotional distress was likely the result of their intentional malicious conduct.  A conduct that was beyond all possible bounds of decency and utterly intolerable in a civilized community, directly caused the Plaintiff to endure the suffering of severe emotional trauma and depression (e.g. the loss of the very shotgun Riley's late father had taught him how to hunt with, when Riley was just 12 years old; said shotgun, being a family heirloom, carries immense sentimental value), that no person should have to suffer through, at the hands of executive functionaries who abuse their authority.

24

Complaint ¶ 32.

    Although Riley asserts in this paragraph that the facts he has
pled satisfy the standard required to adequately plead a claim for
the IIED, I find that the facts pled fail to support such a claim.
Riley's allegation that the firearms include a family heirloom of
"immense sentimental value," id., is insufficient to satisfy the
standard given that the loss of one's home has been held
insufficient to meet that standard.  See Moore, 2012 WL 253834, at
*21 (dismissing claim for IIED where defendants told plaintiffs
that they were committed to helping them remain in their home but
made either weak or nonexistent efforts to help plaintiffs obtain
a loan modification, promised to send loan modification documents
but never did, retained an attorney to institute foreclosure
proceedings or to collect plaintiffs' outstanding mortgage debt,
ignored or refused to respond to plaintiffs' letters, and told
plaintiffs that there would be no foreclosure for three months and
then scheduled a foreclosure sale a month later); id. ("This is not
to minimize the consequences of the defendants' alleged actions:
the court recognizes that 'home foreclosure is a terrible event and
likely to be fraught with unique emotions and angst.'  But the
defendants' actions cannot, as a matter of law, be called 'utterly
intolerable in a civilized community.'")(internal citations
omitted); cf. Stanley v. Landers, Civil No. 09-cv-52-PB, 2009 WL
2242676, at *9 (D.N.H. July 23, 2009)(finding allegations

sufficient to state claim for IIED where defendant engaged in a course of harassing conduct over two years which included taking plaintiff's cane and hitting him with it, beating him, tearing his clothes, knocking his hat off, repeatedly threatening him, and falsely arresting him for disturbing the peace).

In sum, Riley has failed to allege sufficient facts to support a claim for IIED.  See Moore, 2012 WL 253834, at *21 ("While ... some of this conduct may have been unlawful, the court cannot say that any of defendants' alleged actions, whether viewed individually or in conjunction with one another, 'go beyond all possible bounds of decency,' or are 'atrocious and utterly intolerable in a civilized community.'")(quoting Tessier, 33 A.3d at 1131).  Accordingly, I recommend that Count VI be dismissed.

### Conclusion

For the reasons stated above, I recommend that the following counts be dismissed: Count II (substantive due process), Count IV (civil conspiracy), Count V (theft by deception), and Count VI (intentional infliction of emotional distress).  I further recommend that Riley be allowed to proceed with the claims contained in Count I (procedural due process) and Count III (equal protection).  In my simultaneous Order, I will direct the Clerk's Office to issue the summons and forward to the United States Marshals Service, District of New Hampshire: the summons, copies of the Complaint, and this Report and Recommendation.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>**/s/ David L. Martin**</u>
DAVID L. MARTIN
United States Magistrate Judge
June 13, 2012

27