UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| DANIEL JOHN RILEY,<br>Plaintiff, | : | |
| v. | : | C.A. No. 12-175 MML |
| THOMAS COLANTUONO,<br>JOHN P. KACAVAS,<br>SETH R. AFRAME,<br>each in their individual capacity,<br>Defendants. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

Plaintiff Daniel John Riley ("Plaintiff" or "Mr. Riley") brings this *pro se* action[1] under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), claiming that Assistant United States Attorney Seth R. Aframe ("Defendant" or "AUSA Aframe") intentionally initiated civil forfeiture proceedings against Mr. Riley's firearms without sending notice to him or his attorney, filed a false affidavit averring that notice had been sent to Mr. Riley's counsel, and falsified various documents to cover-up that notice was never given, including the forgery of a signature on the return receipt card. The Amended Complaint alleges that these actions deprived Mr. Riley of his firearms without due process and that he was denied equal protection because his codefendants were given fair notice of the forfeiture proceeding.

[1] Plaintiff's case was trimmed by the Court's Memorandum and Order (ECF No. 20), which dismissed all claims except procedural due process and equal protection based on screening pursuant to 28 U.S.C. § 1915A. Mr. Riley was granted leave to amend, ECF No. 20 at 5-6, which he did by adding a new claim of civil conspiracy. ECF No. 21. In his Objection to Defendants' Motion to Dismiss, Mr. Riley acknowledges that he cannot marshal the requisite facts to survive a motion to dismiss the claims against either of the United States Attorneys, Thomas Colantuono and John P. Kacavas, so that they and the related claim of civil conspiracy should also be dismissed. ECF No. 27 at 1-2. Therefore, I recommend that Defendants' Motion to Dismiss be GRANTED as to Count III and as to all claims against Defendants Thomas Colantuono and John P. Kacavas. What remain are Plaintiff's claims that his rights to equal protection and procedural due process were violated of the actions of AUSA Aframe.

Defendant challenges Mr. Riley's Amended Complaint by Motion to Dismiss or alternatively Motion for Summary Judgment, which has been referred to me for recommended findings and disposition.

Because all of the challenged actions of AUSA Aframe are within the scope of a prosecutor's function as a government advocate, I find that he is entitled to absolute prosecutorial immunity and recommend that the Motion to Dismiss be GRANTED. While this disposition terminates the matter, I also consider the alternative Motion for Summary Judgment and find that Mr. Riley has failed to raise a genuine issue of material fact regarding whether AUSA Aframe engaged in any of the alleged misconduct. In the face of undisputed evidence that AUSA Aframe acted with objective reasonableness in that he properly caused notice to be sent to both Mr. Riley and his attorney, I find that his conduct is shielded by qualified immunity and also recommend that the Motion for Summary Judgment be GRANTED.

## I. FACTS[2]

[2] This factual statement is drawn from the Amended Complaint, the various declarations filed by both parties and the public record of the various judicial proceedings involving Mr. Riley, including his criminal case, the forfeiture proceeding, both forfeiture appeals, this Bivens action and Mr. Riley's other Bivens action. To reduce confusion, apart from this Bivens case, the Court adopts the following conventions for referring to these matters:

- "Criminal Action": United States v. Riley, et al., 1:07-cr-00189-GZS (D.N.H.).
- "Forfeiture Action": United States v. One R GUNS Model 44, 7.62 x 54 caliber rifle, Serial Number 11844, seized from Jason Gerhard, et al., 1:08-cv-00394-LM (D.N.H.).
- "Forfeiture Appeal I": United States v. Winchester, Model 1300, 12 Caliber Shotgun, Serial Number L3580523, et al., No. 09-2429 (1st Cir.).
- "Forfeiture Appeal II": United States v. Century Arms Int'l, Model L1A1, Sporter, 308 Caliber Rifle, Serial Number 104090, et al., No. 11-1599 (1st Cir.).
- "Alford Bivens Action": Riley v. Alford, 1:10-cv-00218-GZS (D.N.H.).

For references to the filings in this Bivens case, I use the ECF designation only, except that the declarations filed in this case are referred to by the name of the declarant.

Mr. Riley was convicted after supporting two criminals during a well-publicized, nine-month standoff at their home with federal authorities; he and others helped to stockpile firearms and explosives, effectively turning the New Hampshire property into a potential death trap.[3] When he and his two codefendants were arrested on September 12, 2007, firearms were seized from all three from various locations. Gerhard, 615 F.3d at 16-18. In the Second Superseding Indictment, timely filed on January 9, 2008, Mr. Riley was given notice of the intent of the United States to seek forfeiture of his firearms. Criminal Action, ECF No. 124 at 17.

On September 22, 2008, after the jury verdict of guilty,[4] but before sentencing, AUSA Aframe,[5] on behalf of the United States, initiated a civil forfeiture proceeding against the seized weapons in the District of New Hampshire. Forfeiture Action, ECF No. 1. A paralegal working under his supervision, Francine Conrad, was tasked with sending out the notice of the proceeding, including the summons, the verified complaint and related papers (collectively, "the notice") to the three owners of the firearms pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Conrad Decl. ¶ 3; Aframe Decl. ¶¶ 3-4.

As laid out in her sworn declaration, Ms. Conrad sent the notice to Mr. Riley by certified mail on September 24, 2008; the notice was mailed to the two codefendants the same day. Conrad Decl. ¶¶ 3-4; Forfeiture Action, ECF Nos. 5-7. Mr. Riley's notice was mailed to FMC

---

[3] The details of Mr. Riley's crime are laid out in the First Circuit's thorough opinion affirming his conviction. United States v. Gerhard, 615 F.3d 7, 12-18 (1st Cir. 2010), cert. den., 131 S. Ct. 1536 (2011). Mr. Riley's habeas challenge to his conviction and sentence under 28 U.S.C. § 2255 is pending; however, on January 28, 2013, U.S. Magistrate Judge Margaret J. Kravchuk recommended that his petition be denied. See Riley v. United States, Case No. 1:12-cv-47 (D.N.H. Jan. 28, 2013) (Report and Recommendation of Kravchuk, M.J.).

[4] Mr. Riley was convicted on all Counts that went to the jury. Pertinent to the forfeiture proceeding was the guilty verdict on Count VI, "carrying, using or possessing a firearm in connection with a crime of violence." Criminal Action, ECF No. 389.

[5] AUSA Aframe did not have an appearance in Mr. Riley's criminal proceeding until the appeal phase. During the relevant period, his involvement in this saga is limited to the forfeiture proceeding.

Devens in Ayer, Massachusetts, Conrad Decl. ¶ 4, but was returned soon after with the notation that Mr. Riley had moved to the Strafford County Jail. Id. ¶ 5. On October 1, 2008, she sent the notice to Mr. Riley by certified mail addressed to that facility. Id. ¶¶ 5-6. This time, the receipt card came back indicating it had been received at the facility on October 2, 2008; however, on October 20, 2008, the notice was returned with the notation that it had been refused. Id. ¶¶ 7-8. After consulting with AUSA Aframe for instructions regarding what she should do next to accomplish adequate notification of the initiation of the Forfeiture Action, she sent the notice to Strafford County Jail again, this time by first class mail, with a copy by certified mail to Mr. Riley's attorney of record in the criminal case, Mr. Sven Wiberg. Id. ¶ 10.

The return receipt card for the notice sent to Mr. Wiberg was filled out by someone who printed and signed Mr. Wiberg's name, dated it October 27, 2008, and returned it to Ms. Conrad by mail; her receipt of the card with the apparent signature of Mr. Wiberg caused her to believe that Mr. Wiberg had been served.[6] Id. ¶ 11. In reliance on the signed return receipt card with respect to Mr. Riley, on October 31, 2008, AUSA Aframe filed three affidavits in the Forfeiture Action certifying that the notice had been served by certified mail on September 24, 2008, on the two codefendants and on October 23, 2008, on Mr. Wiberg for Mr. Riley. Aframe Decl. ¶¶ 6-7; Forfeiture Action, ECF Nos. 5-7.

Mr. Riley's Amended Complaint tells a very different story about the forfeiture notice. To undergird its averments with facts, he supplies the Court with his own declaration, one from

[6] Both parties point to exemplars of Mr. Wiberg's signature. ECF Nos. 32-4 at 2; 26-6. These are not pertinent to whether the signature on the return receipt card is that of Mr. Wiberg; that fact is fairly put in issue by Mr. Wiberg's declaration. However, this Court does consider them pertinent to whether Ms. Conrad and AUSA Aframe were acting with objective reasonableness in assuming that Mr. Wiberg had signed the return receipt card. To the untutored eye, several of the exemplars look just like Mr. Wiberg's signature on the return receipt card. Even the outlier is not so dissimilar as to raise a question as to the authenticity of the one on the card. While there is no reason to suppose that AUSA Aframe was familiar with Mr. Wiberg's signature when he filed his affidavit of service on October 31, 2008, if he was, there is no evidence that the signature on the card should have raised a concern that Mr. Wiberg had not gotten the notice.

Mr. Wiberg, and one from a Mr. Haas, apparently a friend of Mr. Riley's brother. Collectively, Mr. Riley argues that he has presented facts sufficient for a fact finder reasonably to infer that AUSA Aframe actually did nothing to serve the forfeiture papers, but instead filed a false affidavit and later produced phony envelopes and a faked return receipt card on which he forged Mr. Wiberg's signature.

Mr. Riley's declaration states that he was transferred from FMC Devens to Strafford County Jail on September 25, 2008, confirming Ms. Conrad's statement that she mailed the notice to Devens on September 24, 2008, but it was returned because Mr. Riley had moved. Riley Decl. ¶ 2; Conrad Decl. ¶¶ 4-5. Mr. Riley also swears that, at Strafford County Jail, he had trouble getting his mail and he never refused any mail.[7] Riley Decl. ¶ 3. He claims that he had no idea that the civil forfeiture had been initiated and was pending; indeed, he claims he made attempts to have the firearms returned to him in both a motion and a letter to the "U.S. Attorney's office." Id. ¶ 8. However, he provides no further information about the motion and letter, so their contents are not before this Court.[8]

The Wiberg declaration is focused on the return receipt card. Mr. Wiberg swears that he has no recollection of getting the notice package at his office on October 27, 2008; that he is fairly certain that the signature on the return receipt card is not his; that he is certain that he did not print his name on the return receipt card; and that he did not advise Mr. Riley about the civil

[7] The Court accepts this fact in the favorable light reserved for the evidence of the nonmoving party under Fed. R. Civ. P. 56. However, it is noteworthy that, at his arraignment in the Criminal Action, Mr. Riley refused to accept a copy of the Third Superseding Indictment and later unsuccessfully moved to dismiss it on grounds that he did not have a copy. United States v. Riley, Criminal No. 07-189-GZS, 2008 WL 2741121, at *3 (D.N.H. July 10, 2008).

[8] In the screening decision in this matter pursuant to 28 U.S.C. § 1915A, this Court flagged these somewhat vague averments in the Complaint as significant to its recommendation that the procedural due process and equal protection claims could proceed. ECF No. 10 at 3-4. Mr. Riley's failure to buttress his pleading with concrete evidence of these facts beyond *ipse dixit* in his declaration drops them from consideration at the summary judgment phase when concrete facts are needed. In the same vein, the Amended Complaint alleges that the "Court and the U.S. Attorney's Office told [him] he had to wait until after the direct appeal was final before his property could be returned." ECF No. 21 ¶ 11. This implausible statement is not repeated in his declaration and is not part of the factual record now.

forfeiture proceeding prior to sentencing, which occurred the next day on October 28, 2008. Wiberg Decl. ¶¶ 1, 4-6. Mr. Wiberg's carefully cabined declaration was signed on September 8, 2012. ECF No. 32-4 at 2.

On October 10, 2012, almost a month after Mr. Wiberg signed the declaration, and two days before it was placed on the record in this matter, Mr. Wiberg filed an assented-to motion to withdraw his appearance on behalf of Mr. Riley in another Bivens action. Alford Bivens Action, ECF No. 56. The relevant contents of that motion to withdraw, in which Mr. Wiberg comments on his role in this proceeding, are pertinent:

> 3. Mr. Riley has also brought an action in 12-cv-00175-MML, which is a civil action brought pursuant to Bivens v. Six Unknown Agents of the Bureau of Narcotics, 403 US 388 (1971). In that case, Mr. Riley has made the undersigned a witness, alleging, in part, that the undersigned's actions or failures to act regarding a forfeiture action related to the criminal case are relevant to his claims in the Bivens case.
>
> 4. These *pro se* cases create a situation where the undersigned's withdrawal from the instant case is required, especially since counsel's recollections and knowledge differ in material ways from Mr. Riley's recollections and allegations, as set forth in those actions. . . .

Id. at 2.

As the forfeiture proceeding got underway, in the related criminal case, Mr. Riley continued to persistently insist on his right to represent himself, despite the Court's refusal to grant Mr. Wiberg's repeated motions to withdraw. See, e.g., Criminal Action, ECF Nos. 439, 452. Shortly before the events at the crux of this case, Mr. Wiberg moved to withdraw on October 13, 2008, because Mr. Riley would not meet or cooperate with him, id., ECF No. 548; the motion was denied on October 21, 2008, six days before the notice of the Forfeiture Action was ostensibly received at his office. On October 28, 2008, the next day after someone signed for the forfeiture notice addressed to Mr. Wiberg, Mr. Riley, represented by Mr. Wiberg,

appeared for the sentencing hearing. In a colloquy with the Court, which occurred when Mr. Wiberg entered his appearance for Mr. Riley and then recurred throughout the proceeding, Mr. Riley refused to acknowledge Mr. Wiberg, stating, "He's not my attorney. He keeps saying he's for Mr. Riley. I know he represents the legal fiction which the U.S. government created, but he doesn't represent Daniel Jonathan, Family of Riley, that live in Maynard." Id., ECF No. 613 at 2; see also id. at 5, 29, 35. On allocution at sentencing, Mr. Riley made a speech that filled twenty pages of transcript.[9] Id. at 5-26. When it ended, the Court imposed a total of 432 months of incarceration[10] followed by five years of supervised release, with the condition among others, that he may not possess any firearm, id. at 32-34, and that "defendant forfeits any interest of all firearms and ammunition involved in the commission of this crime." Id. at 35.[11]

The story returns to the forfeiture proceeding. Armed with AUSA Aframe's affidavits of service on each of the three criminal defendants, the court entered a Partial Final Order of Forfeiture against the firearms owned both by Mr. Riley based on his failure to appear and by one of the codefendants based on his failure to object to the motion for forfeiture. Forfeiture Action, ECF No. 49. The third codefendant argued that the seized firearms belonged to his brother; this attempted defense was unavailing and the remaining firearms were forfeited. Id.,

---

[9] While not pertinent to these Motions, it should be noted that the First Circuit observed at the end of an opinion that thoroughly reviewed the conduct of the trial: "[t]his was a difficult case and the trial court handled it well." United States v. Gerhard, 615 F.3d at 35.

[10] This was subsequently reduced pursuant to Fed. R. Crim. P. 35(b) to 388 months. United States v. Riley, Criminal No. 07-189-GZS, 2011 WL 767638, at *2 (D.N.H. Feb. 28, 2011).

[11] If the Government had chosen to pursue a criminal, instead of a civil, forfeiture proceeding, which is its option, this determination by the sentencing judge would have triggered other proceedings to comply with the procedure for criminal forfeiture set out in Fed. R. Crim. P. 32.2. See generally Stefan D. Cassella, Asset Forfeiture Law in the United States, §§ 1.4 - 1-5, 15-1 - 15-4 (2d ed. 2013). However, because the Government chose to proceed civilly, this forfeiture statement at the time of sentencing did not result in a final order of forfeiture. Nevertheless, the Court notes that neither Mr. Riley nor Mr. Wiberg objected to forfeiture of Mr. Riley's firearms when the judge mentioned it. Criminal Action, ECF No. 613 at 35. While Mr. Wiberg's silence is clearly the consequence of a directive from his client, Mr. Riley was garrulous throughout sentencing, commenting extensively but not on the forfeiture of his firearms.

ECF Nos. 49, 50. An appeal by the third codefendant was dismissed for failure to file his opening brief. Forfeiture Appeal I, Judgment (May 11, 2010).

Mr. Riley swears that he became aware of the Forfeiture Action for the first time on May 24, 2010. Riley Decl. ¶ 8. He promptly filed a motion to reopen under Fed. R. Civ. P. 60(b), alleging that he had not been sent notice as his codefendants had, by a mailing directly to the prison facility where each was incarcerated. Forfeiture Action, ECF No. 55 at 1-2. Rather, assuming the Aframe affidavit of notice to be accurate, his pleading asserts that, despite the notice sent to his attorney, he never received actual notice of the proceeding and the notice given was ineffective in that his attorney failed to inform him or to take any action on his behalf. Id. at 2; Riley Decl. ¶ 12. The Rule 60(b) motion was denied by the district court and appealed to the First Circuit, where the court affirmed in a Judgment that directly addressed the substantive argument: it found the underlying notice to Mr. Riley constitutionally adequate based on the undisputed fact that it was sent by certified mail to Mr. Wiberg and the return receipt card established that Mr. Wiberg got it on October 27, 2008. Forfeiture Appeal II, Judgment at 2 (Jan. 17, 2012).

Undaunted, Mr. Riley sent Mr. Wiberg a copy of the return receipt card filed by the United States in support of the fact found pivotal by the First Circuit. Riley Decl. ¶ 13; Wiberg Decl. ¶ 2. On February 17, 2012, Mr. Riley spoke to Mr. Wiberg, who had continued to act as his attorney on various matters. Riley Decl. ¶ 13. According to Mr. Riley, Mr. Wiberg told him for the first time that "he had never received [the notice] and that the signatures on the [return receipt card] were not his." Id. This statement caused Mr. Riley to conclude that the documents submitted to the district court in the Forfeiture Action and to the First Circuit in the Forfeiture Appeal II were forged. Id.

Spurred to action by this suspicion, Mr. Riley studied the other documents submitted in the Forfeiture Action evidencing the attempts to serve him at the two facilities where he was held; his declaration sets out a detailed analysis of the markings on them and argues that their appearance permits the inference that they lack the indicia of papers sent through the mail as claimed by the United States. Id. ¶¶ 14-15. Mr. Riley buttresses his speculation with the declaration of Mr. Haas, who attaches a return receipt card he got in the mail at his home and notes that it has a postal stamp, unlike the card presented by AUSA Aframe. Haas Decl. ¶¶ 3-4. The Haas declaration also reports hearsay conversations with unnamed postal workers who told Mr. Haas that the tracking number on the return receipt card with the allegedly forged signature is not valid: "no such tracking records existed for said number." Haas Decl. ¶ 1a.

AUSA Aframe counters Mr. Riley's speculation and Mr. Haas's hearsay with the declaration of the Postmaster for the relevant post office. Postmaster Walsh is familiar with the relevant postal procedures; he swears that he reviewed the relevant documents and their markings are consistent with AUSA Aframe's testimony that they were mailed. Walsh Decl. ¶¶ 3-9. Defendant also presents the declaration of Sergeant Brackett of the Strafford County Jail, who confirms that the markings on the envelope containing the notice that Mr. Riley claims was never sent are consistent with mail received at and returned to sender by that facility. Brackett Decl. ¶¶ 8-9.

**II. LAW**

This matter is presented both as a challenge to the pleadings under Fed. R. Civ. P. 12(b)(6) and for summary judgment under Fed. R. Civ. P. 56. I address each Motion separately.

### A. Motion to Dismiss

#### 1. Pleading Standard under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the basic standards applicable in this Circuit under Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), are set out in Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33 (1st Cir. 2011). All well-pleaded facts are to be taken as true and the Court must draw all reasonable inferences from the complaint in the plaintiff's favor. Marrero-Rodríguez v. Municipality of San Juan, 677 F.3d 497, 500 (1st Cir. 2012); Field v. Napolitano, 663 F.3d 505, 508 (1st Cir. 2011). Well-pleaded facts, however, do not include the plaintiff's legal conclusions couched as facts or allegations that merely parrot the elements of the cause of action. Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

#### 2. Absolute Immunity Applicable to Prosecutorial Conduct

It is well settled that a prosecutor enjoys absolute immunity from a suit for damages as long as the challenged conduct falls within the ambit of his/her function as an advocate for a governmental entity like the United States. Van de Kamp v. Goldstein, 555 U.S. 335, 340-43 (2009); Burns v. Reed, 500 U.S. 478, 492 (1991); Imbler v. Pachtman, 424 U.S. 409, 416 (1976). Chief Judge Learned Hand explained over a half century ago that a prosecutor's absolute immunity reflects "a balance between the evils." Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949). "[I]t has been thought in the end better," he said, "to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Id. So long as a prosecutor serves in the role of advocate, absolute immunity applies without regard to how reprehensible the alleged conduct – in the seminal case, Imbler,

the Supreme Court blocked a suit based on allegations of intentionally allowing false testimony and presentation of doctored exhibits. 424 U.S. at 423-25; see also Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 31 (1st Cir. 1995) (failure to dismiss criminal case against innocent defendant is reprehensible, but shielded by absolute immunity). Absolute immunity even protects a prosecutor who is alleged to have misled the court to cover-up his own failure to perform constitutionally mandated functions. Aldridge v. City of Cambridge, Civil Action No. 12-12273-RGS, 2012 WL 6622495, at *8 (D. Mass. Dec. 18, 2012) (absolute immunity for prosecutors alleged to have misled court to conceal failure to disclose exculpatory evidence).

To determine whether absolute immunity attaches to a particular kind of prosecutorial activity, the court must focus on functional considerations; absolute immunity applies when a prosecutor is acting as "an officer of the court." Van de Kamp, 555 U.S. at 342-43; Guzman-Rivera, 55 F.3d at 29. The functional approach examines "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229 (1988); see also Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor"). It is clear that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, though not when a prosecutor gives advice to police during a criminal investigation. Burns, 500 U.S. at 492, 496; Bey v. Sullivan, Civil Action No. 11-10918-GAO, 2013 WL 160443, at *5 (D. Mass. Jan. 14, 2013). Decisions and actions related to the initiation of judicial process in the civil as well as the criminal arena are so clearly within the ambit of absolute immunity that this Circuit recently concluded that pre-litigation prosecutorial decisions are absolutely immune even if a proceeding is never initiated. Knowlton v. Shaw, No. 12-1251, 2013 WL 49828, at *4 (1st Cir. Jan. 4, 2013) (decision to initiate administrative proceedings entitled to absolute immunity).

The fact that the specific function – service of the notice on Mr. Riley – may be characterized as administrative is beside the point: where an administrative function requires legal knowledge and the exercise of related discretion, absolute immunity must follow. Van de Kamp, 555 U.S. at 344. The fact that Mr. Riley's suit is based not on Section 1983, but rather is a Bivens action also has no impact on the absolute immunity enjoyed by the prosecutor: the "law of immunity in a Bivens claim against a federal official parallels that in a § 1983 claim against a state official." Crooker v. United States, Civil Action No. 08-10149-PBS, 2010 WL 3860597, at *8 n.13 (D. Mass. Sept. 29, 2010) (citing Moore v. Valder, 65 F.3d 189, 192 (D.C. Cir. 1995)); see also Butz v. Economou, 438 U.S. 478, 503-04 (1978). And the fact that AUSA Aframe was prosecuting a civil forfeiture proceeding in lieu of a criminal forfeiture does not change the analysis: it is well settled that federal prosecutors pursuing civil forfeiture are advocates engaged in a core prosecutorial function so that actions taken in connection with the initiation of such proceedings are protected by absolute immunity. Schrob v. Catterson, 948 F.2d 1402, 1412 (3d Cir. 1991) (*in rem* forfeiture is sufficiently connected to criminal process to warrant absolute immunity); see also Cooper v. Parrish, 203 F.3d 937, 947-48 (6th Cir. 2000) (absolutely immunity applies to actions taken in filing civil forfeiture complaints); Mendenhall v. Goldsmith, 59 F.3d 685, 690-92 (7th Cir. 1995) (absolute immunity granted to prosecutors in civil RICO proceeding involving seizure and forfeiture); Ehrlich v. Giuliani, 910 F.2d 1220, 1223 (4th Cir. 1990) (absolute immunity blocks claims concerning actions to freeze assets for forfeiture).

The facts of Schrob are analogous to the facts of Mr. Riley's claim. The Schrob plaintiffs brought a Bivens action to challenge the conduct of a prosecutor who initiated an *in rem* civil forfeiture against the business that they owned with an investor who had been indicted. 948 F.2d at 1404-05. With no notice to plaintiffs who were not involved with the underlying criminal

action, the prosecutor falsely told a magistrate judge that all owners of the business had been indicted or convicted, as a result of which their business was seized by the U.S. Marshals Service. 948 F.2d at 1405. In applying the "functional" approach to whether this conduct, which involved false statements during the initiation of an *in rem* proceeding to cover up that lack of notice, the court concluded that filing an action against "guilty property" is intimately connected with the criminal process and that, despite the false statements that resulted in a wrongful seizure, the Schrob AUSA, like AUSA Aframe in the Forfeiture Action, was acting as the government's advocate in civil litigation so his conduct, though deplorable, was protected by absolute immunity.[12] 948 F.2d at 1412.

In his counter argument, Mr. Riley dips into the case law and argues that AUSA Aframe's conduct is "preparatory conduct that is merely administrative" and therefore is not protected, citing Guzman-Rivera, 55 F.3d at 29. The argument misses the boat and the full sentence from which Mr. Riley pulled that snippet exposes the fallacy. In it, the court makes clear that preparatory conduct "which is itself prosecutorial" is absolutely immune. Id. In any event, Mr. Riley is not challenging the ministerial tasks carried out by the paralegal in placing the notice in the mail; rather, his Amended Complaint attacks AUSA Aframe's conduct in using his legal knowledge regarding what notice is adequate to initiate a forfeiture proceeding in his capacity as an advocate for the United States. The fact that the paralegal returned to AUSA Aframe for instructions when the notice was returned refused confirms that he was performing a function that "require[s] legal knowledge and the exercise of related discretion." Van de Kamp,

[12] The Schrob court focused on other avenues that these clearly injured plaintiffs could explore to seek redress for the injury arising from the wrongful forfeiture proceeding and concluded that the law of forfeiture provides many. 948 F.2d at 1411-12. Presumably, Mr. Riley has the same options.

555 U.S. at 344. This is quintessentially the action of a prosecutor functioning in that capacity. Therefore, his conduct is shielded by absolute immunity.

At bottom, Mr. Riley's argument that AUSA Aframe should not be protected by absolute immunity mistakenly focuses on the nature of AUSA Aframe's alleged misconduct, rather than on the function being performed. Mr. Riley theorizes that AUSA Aframe was motivated by his fear that the Forfeiture Action would not succeed in the face of Mr. Riley's statute of limitations defense and so adopted the strategy of excluding him from notice of the Forfeiture Action.[13] He contends that AUSA Aframe properly served the two codefendants, but intentionally failed to give notice either to Mr. Riley or his attorney and then lied to the court and forged documents to cover-up his misconduct. Riley Decl. ¶ 19. He misses the point that this conduct fits precisely within the contours of the claim against the prosecutor in Schrob, which was blocked by absolute immunity based on the prosecutorial function being performed. Schrob, 948 F.2d at 1412, 1422. Focused on conduct and not function, Mr. Riley argues that forgery and perjury cannot be "acting as an advocate nor within the scope of [a prosecutor's] duties." ECF No. 27 at 3. However, absolute immunity cannot be avoided because the misconduct is not proper prosecutorial conduct. While there can be no doubt that depriving people of their constitutional rights is not part of AUSA Aframe's official duties, in devising how to serve the notice, an essential step in the initiation of the Forfeiture Action, he nevertheless was carrying out the

[13] Mr. Riley makes much of his motive argument, claiming that his codefendants were known by AUSA Aframe to have attorneys who "sold them out" so they would fail to raise the statute of limitations defense to the forfeiture, while Mr. Riley's discovery of the defense was known to the government from opening his mail. Riley Decl. ¶ 19. Motivation is legally irrelevant to the determination of absolute immunity. Buckley, 509 U.S. at 271-72. However, it is worth noting that Mr. Riley's theory about motivation collapses when the filings in the Criminal Action are reviewed. He mistakenly looks to the Third Superseding Indictment, which was the operative one by the time the case was presented to the jury – that indictment includes a Notice of Criminal Firearms Forfeiture and was filed on January 16, 2008, outside the 120-day deadline for initiating forfeiture proceedings after seizure. Criminal Action, ECF No. 162. However, the same notice was also in the Second Superseding Indictment, which was filed on January 9, 2008, within the statutory time limit. Id., ECF No. 124. So Mr. Riley may have thought he had a good defense under the statute of limitations, but he did not. It is illogical that AUSA Aframe could have been motivated by the desire to give notice of the Forfeiture Action only to defendants whom he knew to be ignorant of a non-existent defense.

functions of an advocate for the United States. Therefore, his conduct is protected by the shield of absolute immunity. See Donovan v. Fowle, 762 F. Supp. 2d 186, 199-200 (D. Me. 2011) (as long as defendants were acting as officers of the court conduct that deprived persons of their civil rights does not change that it is protected by absolute immunity).

While Mr. Riley is certainly right that "absolute immunity is strong medicine," it protects AUSA Aframe from the claims in this case. See Torres Ramirez v. Bermuda Garcia, 898 F.2d 224, 228 (1st Cir. 1990).[14] They must be dismissed.

### 3. Claim Preclusion

AUSA Aframe argues that this action should be dismissed because of claim preclusion based on the finality of the Forfeiture Action and Forfeiture Appeal II, which Mr. Riley unsuccessfully tried to reopen based on lack of actual notice. Claim preclusion seems a stretch in this circumstance, where the two cases are based on such fundamentally different legal principles and assert such different claims. Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010). However, this Court need not plunge into the murky waters of claim preclusion and declines to do so in light of the holding on absolute immunity.

## B. Motion for Summary Judgment

The Court turns next to AUSA Aframe's Motion for Summary Judgment, which requires this Court to sift the evidence to isolate the material facts and test whether they are sufficient to raise a genuine issue for determination by a fact finder. In light of this Court's determination

---

[14] In light of AUSA Aframe's absolute immunity, at the pleading stage, the Court will not address his argument that he has qualified immunity other than to observe that a motion to dismiss this case based on qualified immunity faces an uphill climb in light of the Amended Complaint's specific factual allegations that AUSA Aframe deliberately set about to deprive Mr. Riley of his property without any due process and lied and forged to cover-up his conduct. Drumgold v. Callahan, et al., Nos. 11-1304, 11-2016, 12-1052, slip op. at 28 (1st Cir. Jan. 31, 2013) (no qualified immunity where plaintiff presented proof of intentional or reckless suppression of evidence); Maldonado v. Fontanes, 568 F.3d 263, 271-72 (1st Cir. 2009) (motion to dismiss denied because qualified immunity does not protect cruel seizure and killing of pets without due process as laid out in complaint, which is taken as true at pleading stage). At the summary judgment phase, when the pleading must be buttressed by competent evidence, the outcome is different.

that AUSA Aframe has absolute immunity, this exercise is not necessary but is nevertheless useful if a higher court hereafter disagrees with that conclusion. In addition, Mr. Riley's Amended Complaint makes scurrilous accusations against AUSA Aframe; for that reason, it is worth setting out the underpinnings for the Court's conclusion that Mr. Riley has failed to marshal sufficient competent facts to raise a genuine issue regarding whether the reprehensible conduct of which he has accused AUSA Aframe might have occurred. In light of the evidence in the sworn declarations presented by both parties, I conclude that Mr. Riley's proof is insufficient as a matter of law to overcome the qualified immunity that shields a public official like AUSA Aframe, whose conduct is established by undisputed evidence to have been objectively reasonable.

**1. Summary Judgment Standard under Fed. R. Civ. P. 56**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, this Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the

nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). However, the non-moving party may not rest merely on conclusory allegations or denials, but must present affirmative evidence of specific facts demonstrating a genuine issue as to each element on which he will bear the ultimate burden at trial. See Santiago-Ramos, 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "Even in cases where elusive concepts as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Johnston v. Urban League of R.I., Inc., C.A. No. 09-167S, 2011 WL 2297655, at *3 (D.R.I. May 17, 2011) (alteration in original) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). The non-moving party's evidence must have substance in that "it limns differing versions of the truth which a factfinder must resolve." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

**2. Qualified Immunity Applicable to Prosecutorial Conduct**

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It is an added layer of protection for public officials faced with claims brought under Bivens, which itself is a remedy that exists only in "limited circumstances" when plaintiffs lack "any other remedy for the alleged constitutional deprivation." Air Sunshine, Inc., 663 F.3d at 32-33, 37-38 (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 67 (2001)). Providing immunity from suit and not a mere defense to liability, qualified immunity protects federal officials from civil liability in the performance of

discretionary functions. Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010). It "balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

To avoid the protection available to AUSA Aframe as a result of the qualified immunity doctrine, Mr. Riley's evidence against him must clear an inquiry based on a two-part test. Specifically, at the summary judgment phase, Mr. Riley bears the burden of presenting competent evidence of facts (1) that make out a violation of a constitutional right and (2) that demonstrate that the right violated was clearly established at the time of the alleged violation. Lopera v. Town of Coventry, 640 F.3d 388, 395-96 (1st Cir. 2011); Buchanan v. Maine, 469 F.3d 158, 168 (1st Cir. 2006) ("On summary judgment on qualified immunity, the threshold question is whether all the uncontested facts and any contested facts looked at in the plaintiff's favor show a constitutional violation."). The second prong, in turn, has two aspects. It focuses on the law at the time of the violation, and more concretely on the facts of the particular case, including whether a reasonable defendant would have understood that this conduct violated the plaintiff's constitutional rights. Drumgold, Nos. 11-1304, 11-2016, 12-1052, slip op. at 26.

In evaluating a qualified immunity claim, courts have discretion to skip the first prong and grant summary judgment based on qualified immunity if the official could reasonably have believed that his conduct was lawful, without resolving the often more difficult question whether the purported right exists at all. Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Asociación De Periodistas De P.R. v. Mueller, 680 F.3d 70, 81 (1st Cir. 2012) (court need not follow the steps of the qualified immunity analysis sequentially); Lopera, 640 F.3d at 396 (no need to spend scarce resources in analysis of constitutional violation if objectively reasonable officials could

disagree on the lawfulness of actions). Conversely, summary judgment based on qualified immunity must be denied if "no reasonably competent officer would have concluded" that the action was lawful. Malley v. Briggs, 475 U.S. 335, 341 (1986). In determining whether an official acted with objective reasonableness courts look to the information known to the officials at the time of their action. Kelley v. LaForce, 288 F.3d 1, 7 (1st Cir. 2002). Qualified immunity exists even for constitutional mistakes and protects all but the plainly incompetent or those who knowingly violate the law. Solis-Alarcón v. United States, 662 F.3d 577, 581 n.6 (1st Cir. 2011).

In the face of this burden, Mr. Riley's Amended Complaint and Declaration try to build a factual case on inferences derived from Mr. Riley's own analysis of the markings on the two envelopes and the return receipt card, shored up by the Haas Declaration. In the face of the undisputed and competent facts presented by Defendant, these inferences collapse. However, Mr. Riley also presents the Wiberg Declaration – reviewed with a quick look, it appears to supply evidence that could create a genuine factual issue. However, on closer review that clarity fades; the facts in the Wiberg Declaration do not support either the inference of "forgery" or the inference that the notice was never mailed, both of which Mr. Riley tries to draw from it. Riley Decl. ¶ 13.

The Wiberg Declaration opens with a survey of the chaotic circumstances surrounding Mr. Wiberg's engagement during the relevant period as a result of Mr. Riley's instructions to him to take no actions and the court's denial of his motion to withdraw in the Criminal Action. Wiberg Decl. ¶ 1. With that background, Mr. Wiberg makes the cribbed assertion that there was no discussion of any forfeiture notice prior to Mr. Riley's sentencing on October 28, 2008; he repeats the same fact at the end of his Declaration. Id. ¶¶ 1, 6. Since the sentencing occurred the very next day after the return receipt card for the notice was signed with his name, this averment

leaves open the possibility that Mr. Wiberg later advised Mr. Riley about the Forfeiture Action; Mr. Riley's own sworn statement stands as the only evidence that he did not learn of the civil forfeiture proceeding from Mr. Wiberg.[15] Riley Decl. ¶¶ 9, 18. Mr. Wiberg is similarly circumspect about the return receipt card itself: he swears that he does not recall getting it and thinks he would have; that he is fairly certain (but not absolutely sure) that the signature is not his; and that he is absolutely sure he did not write the printed name on the return receipt card. Wiberg Decl. ¶¶ 4-5. This proves only that it is unlikely that Mr. Wiberg himself signed for the notice on October 27, 2008 – it does not rule out the likelihood that someone else, authorized to do so by Mr. Wiberg, may have accepted it, signed his name on the card and returned it to AUSA Aframe. It leaves unrebutted the testimony of Paralegal Conrad that the notice was mailed to Mr. Wiberg and that she received back the return receipt card appearing to have been signed by Mr. Wiberg. Conrad Decl. ¶¶ 10-11. In all, the Wiberg Declaration provides no factual foundation for Mr. Riley's speculative inferences of forgery and perjury by AUSA Aframe.[16]

The balance of Mr. Riley's evidence cannot save his claim.

The Haas Declaration does not provide any competent evidence to buttress the allegations in the Amended Complaint. It attempts to add support to Mr. Riley's well-argued speculation that the envelopes and the return receipt card never travelled through the postal system. However, Mr. Haas's statement about the markings on receipts he has received in the mail proves nothing about what markings might be expected on a receipt from a package that goes through a postage meter as this one did. See Conrad Decl. ¶ 5. Similarly, the statement that a

---

[15] Mr. Riley's declaration of course is sufficient to create a genuine issue of fact on that point.

[16] This narrow view of the Wiberg Declaration is compelled by its carefully chosen language. It is also appropriate based on Mr. Wiberg's statement that he disclosed what Mr. Riley had authorized him to include in light of the constraints imposed on him by the attorney/client privilege. Wiberg Decl. ¶ 6. In addition, a literal read seems necessary in light of Mr. Wiberg's contemporaneous filing in the Alford Bivens Action, in which he represented that "counsel's recollections and knowledge differ in material ways from Mr. Riley's recollections and allegations" in reference to this case and the Alford Bivens Action. Alford Bivens Action, ECF No. 56 ¶¶ 3-4.

part-time postal worker said the tracking number does not exist is rank hearsay and probative of nothing at the summary judgment stage. Kenney v. Floyd, 700 F.3d 604, 607 (1st Cir. 2012); Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 666 (1st Cir. 2010). Countering Mr. Riley's speculation about the significance of the markings is the sworn statement of the Postmaster of the relevant post office, who has first-hand knowledge of the relevant postal procedures and markings. Walsh Decl. ¶ 1-2. His evidence that the two envelopes and the receipt in fact traveled through U.S. Postal Service processing and that the tracking number can no longer be retrieved because it is more than two years old is competent and unrebutted. See Walsh Decl. ¶¶ 9-10.

Mr. Riley's speculation that the notice was never mailed to the Strafford County Jail is based on his limited knowledge of the facility's procedures and his assertion that he never refused mail and never received the notice. Riley Decl. ¶¶ 8, 17. The Brackett Declaration fills in the facts regarding the facility's procedures, including that the envelope with the refusal notation is marked with the stamp used by the facility and that the return receipt card was signed by the employee of the facility who was responsible for signing for mail during the relevant period. Bracket Decl. ¶¶ 8-9. This competent and uncontradicted evidence establishes that the notice was received at the Strafford County Jail while Mr. Riley was there and was returned by the facility to AUSA Aframe. While there is clearly a factual dispute as to whether Mr. Riley refused it, that has no bearing on AUSA Aframe's conduct. Kelley, 288 F.3d at 7 (reasonableness of official's action tested based on information known to him at the time).

To close, Mr. Riley has failed to present sufficient evidence to raise a genuine issue regarding his allegations that AUSA Aframe engaged in intentional misconduct for the purpose of depriving Mr. Riley of due process, while AUSA Aframe has provided competent evidence

establishing that he took objectively reasonable steps to provide notice to Mr. Riley consistent with the constitutional requirements of procedural due process. Forfeiture Appeal II, Judgment at 2 (no procedural due process violation based on notice as allegedly given by AUSA Aframe); Martinez-Rodriguez, 597 F.3d at 422 (where plaintiff fails to put forth sufficient facts for a rational jury to conclude constitution was violated, defendants entitled to qualified immunity as a matter of law). Plaintiff also has failed to raise a genuine issue of fact sufficient to support his equal protection claim – rather, the undisputed facts establish that the notice to Mr. Riley was mailed to him at his place of incarceration in exactly the same way and on the same day as it was mailed to his codefendants. Walsh Decl. ¶¶ 4-9 (based on firsthand knowledge of postal procedures in Concord, New Hampshire, envelope reflects unique postal markings evidencing mailing on September 24, 2008). Sidestepping whether a cause of action for a deprivation of procedural due process is even cognizable in a Bivens case, Air Sunshine, Inc., 663 F.3d at 333-34, as well as the difficult question whether the Wiberg declaration might make out a procedural due process violation, despite AUSA Aframe's efforts to give notice,[17] I conclude that Mr. Riley's evidence is insufficient as a matter of law to overcome the qualified immunity that shields a federal official, like AUSA Aframe, who has established by undisputed and competent evidence that he acted with "objective reasonableness." Harlow, 457 U.S. at 817-18; Lopera,

[17] Still unresolved is the contested allegation that Mr. Riley did not get actual notice from any source and that, while the notice was mailed to his attorney, his attorney did not receive it on October 27, 2008, as the First Circuit assumed he did in entering judgment in the Forfeiture Appeal II. Whether the new fact – that Mr. Wiberg does not recall receiving it and believes he probably is not the person who signed for it – is sufficient to reopen the issue determined by the First Circuit when it affirmed the forfeiture order need not be decided here. Compare Whiting v. United States, 231 F.3d 70, 71 (1st Cir. 2000) (due process requires that notice be sent in a manner reasonably calculated under all of the circumstances to apprise interested parties of suit; actual receipt not automatically required), with United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995) (per curiam) (if defendant incarcerated, "fundamental fairness surely requires that either the defendant or his counsel receive actual notice of intent to forfeit") (internal citation omitted).

640 F.3d 395-97; Maldonado, 568 F.3d at 269. AUSA Aframe's alternative Motion for Summary Judgment should be granted.

**III. CONCLUSION**

For the foregoing reasons, I recommend that Defendant Seth R. Aframe's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 26) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service. See Fed. R. Civ. P. 72(b)(2). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 5, 2013